IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Civil No. 3:24-cv-078 |
| ) | |
| v. ) | |
| ) | VERIFIED COMPLAINT FOR |
| FIREARMS SEIZED FROM ) | FORFEITURE IN REM |
| KENDRICK RAMON PAGE, ) | |
| ) | |
| Defendants. ) | |

Plaintiff, United States of America, hereby files and serves this VERIFIED COMPLAINT IN REM and alleges as follows:

## I.  NATURE OF THE ACTION

1. This is an action to forfeit and condemn specific property (hereinafter the "Defendant Property") to the use and benefit of the United States of America (hereinafter "Plaintiff"), as set forth below.

2. The Defendant Property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(11) as firearms used or intended to be used to facilitate the transportation, sale, receipt, or concealment of illegal controlled substances or any proceeds traceable to illegal controlled substances.

3. The Defendant Property is subject to forfeiture pursuant to 18 U.S.C. § 924(d) as firearms involved in or used in knowing violations of 18 U.S.C. § 922(g)(1) and (3).

## II. DEFENDANT IN REM

4. The Defendant Property consists of the following firearms actually or constructively possessed by Kendrick Ramon Page (hereinafter "PAGE") in violation of federal law:

    a. a Glock pistol (SN: DRS414 US); and

    b. a Smith & Wesson pistol (SN: KFF0105).

## III. JURISDICTION AND VENUE

5. This Court has jurisdiction over a civil action commenced by Plaintiff under 28 U.S.C. § 1345 and over an action for forfeiture under 28 U.S.C. § 1355(a).

6. This Court has in rem jurisdiction and venue over the Defendant Property under 28 U.S.C. § 1355(1)(a) as acts or omissions giving rise to the forfeiture occurred in this district.

7. The Plaintiff believes, based on available knowledge, information, and belief, that the following factual contentions have evidentiary support or will likely have evidentiary support after a reasonable opportunity for investigation and discovery.

## IV. FACTS

### A. General Matters

8. The Controlled Substances Act was enacted by Congress as Title II of the Comprehensive Drug Abuse Prevention and Control Act of 1970, Pub. L. No. 91-513, 84 Stat. 1236 (1970) (codified at 21 U.S.C. §§ 801–904).

9. The term "controlled substance" is defined in 21 U.S.C. § 802(6) to mean a drug or other substance, or immediate precursor, included in any of the five schedules of such substances set forth in subchapter I of Title 21.

10. Schedule II controlled substances have a high potential for abuse and have a currently accepted medical use in treatment in the United States or a currently accepted medical use with severe restrictions. 21 U.S.C. § 812(b)(2)(A)–(B).

11. Abuse of a Schedule II controlled substance may lead to severe psychological or physical dependence. 21 U.S.C. § 812(b)(2)(C).

12. Cocaine is a Schedule II controlled substance. 21 U.S.C. § 812(c), Sched. II(a)(4); 21 C.F.R. § 1308.12(b)(4) (2024).

13. Methamphetamine in any form is a Schedule II controlled substance.[1] 21 C.F.R. § 1308.12(d)(2) (2024).

14. Under the Controlled Substances Act, it is unlawful to distribute, dispense, or possess with intent to distribute a controlled substance unless authorized by law to do so. 21 U.S.C. § 841(a)(1).

15. Under the Controlled Substances Act, it is unlawful to conspire with others to violate its prohibitions. 21 U.S.C. § 846.

---

[1] While 21 U.S.C. § 812(c), Sched. II(c) only includes "injectable liquid which contains any quantity of methamphetamine" as a Schedule II drug, classifying all other forms of methamphetamine as Schedule III (21 U.S.C. § 812(c), Sched. III(a)(3)), the most current drug schedules, which are updated and republished annually in accordance with 21 U.S.C. § 812(a), classify all forms of methamphetamine as Schedule II. 21 C.F.R. § 1308.12(d)(2) (2024).

### B. Overview of the Conspiracy

16. On December 11, 2019, PAGE and seven others were indicted in this District for conspiracy to distribute controlled substances in the Southern District of Iowa and elsewhere. *United States v. Kendrick Ramon Page, et al.*, No. 3:19-cr-00129 (S.D. Iowa).

17. PAGE's conduct in furtherance of the conspiracy involved fifty or more grams of actual methamphetamine and 280 or more grams of cocaine base in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A).

18. PAGE went to trial on July 6, 2021.

19. On July 13, 2021, PAGE was convicted of being part of a conspiracy to possess with intent to distribute, to distribute, and to manufacture a controlled substance, specifically, fifty grams or more of actual (or pure) methamphetamine and 280 grams or more of cocaine base.

20. PAGE was not authorized by law to distribute, dispense, or possess controlled substances.

21. On November 22, 2021, PAGE was sentenced to 340 months' imprisonment.

22. On February 24, 2023, PAGE's conviction was affirmed by the U.S. Court of Appeals for the Eighth Circuit. *United States v. Armstrong*, 60 F.4th 1151 (8th Cir. 2023).

23. PAGE and his co-defendants were members of a drug-trafficking organization established in the early 2000s that operated in and around Burlington, Iowa, with activities in Iowa, Illinois, and elsewhere.

24. PAGE played a central role in the conspiracy by recruiting members, asking members to transport and sell drugs, ordering members to collect drug debts, setting drug prices, assisting members of the conspiracy in coordinating the distribution of drugs, and generally overseeing his "workers" in the conspiracy.

25. Law enforcement believed PAGE used coded language to communicate with others about drug trafficking and involved his family members in his crimes.

26. At Page's sentencing, the Government presented testimony from two witnesses who both regularly observed PAGE carrying a gun on his person while drug trafficking.

### C.  Seizure of the Defendant Property

27. When executing multiple search warrants in the case on November 19, 2019, officers located firearms, magazines, and ammunition during a search of one of PAGE'S residences on Sunnyside Avenue in Burlington, as well as a rifle, a bag of marijuana, and a bag of cash during a search of another of Page's residences on Leffler Street in Burlington.

28. Based on physical and electronic surveillance, law enforcement investigating PAGE's drug trafficking knew he frequented multiple residences in Burlington, Iowa, Roselle, Illinois, Schaumberg, Illinois, and perhaps elsewhere. He often travelled between these locations and routinely stayed at each for several days at a time.

29. A U.S. Magistrate Judge in the U.S. District Court for the Northern District of Illinois determined on November 18, 2019, there was probable cause to search 901 East Woodfield Office Court, Building E, Room 1313, in Schaumburg, Illinois (hereinafter "Room 1313") for evidence of the drug-trafficking conspiracy. Physical and electronic surveillance showed PAGE engaged in drug trafficking from Room 1313.

30. Room 1313 was, at the time, the residence of Cimone Buchanan (hereinafter "Buchanan"), who was temporarily residing there because a house she and PAGE were purchasing together was rendered uninhabitable by a fire in August 2019. Page frequently stayed with her for days at a time.

31. PAGE and Buchanan have been married since 2010 and have four children together.

32. Though the drug-trafficking conspiracy was geographically centered in the Burlington, Iowa area, PAGE primarily resided during this time in Schaumburg, Illinois, with Buchanan. Thus, Room 1313 was, at times, also one of PAGE's residences.

33. On November 19, 2019, law enforcement executed the search warrant on Room 1313.

34. During the execution of the warrant, law enforcement seized two firearms:

    a. a Glock pistol (SN: DRS414 US); and

    b. a Smith & Wesson pistol (SN: KFF0105).

35. Law enforcement found evidence connecting PAGE to the room.

### D. Evidence of the True Ownership of the Defendant Property

36. Buchanan told law enforcement that she had a permit to carry firearms.

37. Buchanan claimed that one of the firearms was hers.

38. On November 19, 2019, following the execution of the search warrant, agents listened to a recorded jail call between PAGE and Buchanan.

39. In the call, PAGE asked Buchanan if they found his "tools" in the search.

40. Buchanan replied that they did, but that she had a "card," so she could take them.

41. PAGE replied they were his, and he would take them.

42. No actual tools were found during the search of Room 1313.

43. Agents believe the "tools" discussed in the jail call allude to the Defendant Property and PAGE's actual ownership of the firearms.

44. Law enforcement officers know from training and experience that people involved in illegal drug trafficking commonly possess firearms to protect themselves, their illegal drugs, and their drug profits from other persons.

45. Law enforcement officers know from training and experience that some people, at times, attempt to take responsibility for firearms seized from their friends or family during an investigation into drug trafficking or other illegal activities in an attempt to keep them out of trouble or to minimize the trouble.

46. PAGE possessed the Defendant Property to protect himself, his illegal drugs, and his drug profits from other persons.

### E.     PAGE's Background

47. PAGE began illegally using controlled substances at age 14.

48. PAGE typically smoked three to four grams of marijuana a day until he was taken into custody in this case.

49. At times relevant to this Complaint, PAGE was a known user of marijuana, a controlled substance, which made it illegal under 18 U.S.C. § 922(g)(3) for him to actually or constructively possess firearms.

50. PAGE knew he was a user of a controlled substance when he possessed the Defendant Property in violation of 18 U.S.C. § 922(g)(3).

51. In 2001, PAGE pled guilty to aggravated assault (an aggravated misdemeanor punishable by more than one year's imprisonment) in the Iowa District Court for Des Moines County and was sentenced to two years' imprisonment (suspended).

52. In 2003, PAGE pled guilty to possession of cocaine in the Texas District Court for the 382nd Judicial District and was sentenced to three years' imprisonment.

53. In 2006, PAGE pled guilty to possession of MDMA (ecstasy) in the Louisiana District Court for Caddo Parish after law enforcement observed him standing on a street corner known for drug trafficking, searched his person, and found four ecstasy pills and $357 in cash. He was sentenced to one year of hard labor (suspended).

54. As a result of his prior convictions, PAGE was prohibited under federal law from possessing firearms that had travelled in interstate commerce.

55. The Defendant Property was manufactured outside the state of Iowa and travelled in interstate commerce prior to PAGE actually or constructively possessing it.

56. As a result of PAGE's federal conviction, he is prohibited under federal law from actually or constructively possessing firearms.

57. Buchanan has recently been contacted by law enforcement, and she verbally disclaimed any interest in seeking the Defendant Property but declined to sign a written abandonment form.

## V.   COUNT ONE
## FORFEITURE UNDER 21 U.S.C. § 881(a)(11)

58. Plaintiff repeats and realleges each and every allegation set forth above.

59. Plaintiff has reason to believe that the Defendant Property constitutes firearms used or intended to be used to facilitate the transportation, sale, receipt, possession, or concealment of illegal controlled substances or any proceeds derived from illegal controlled substances.

60. As a result of the foregoing, the Defendant Property is forfeitable to Plaintiff under 21 U.S.C. § 881(a)(11).

## VI.   COUNT TWO
## FORFEITURE UNDER 18 U.S.C. § 924(d)

61. Plaintiff repeats and realleges each and every allegation set forth above.

62. Plaintiff has reason to believe that the Defendant Property constitutes firearms involved in or used in a knowing violation of 18 U.S.C. § 922(g)(1), which makes it illegal for a person who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year to actually or constructively possess firearms.

63. Plaintiff has reason to believe that the Defendant Property constitutes firearms involved in or used in a knowing violation of 18 U.S.C. § 922(g)(3), which makes it illegal for a person who is an unlawful user of or addicted to any controlled substance to actually or constructively possess firearms.

64. As a result of the foregoing, the Defendant Property is forfeitable to Plaintiff under 18 U.S.C. § 924(d).

## VII.   CLAIM FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the foregoing firearms be civilly forfeited, and such other relief to which it is entitled under federal law.

Respectfully Submitted,

Richard D. Westphal

United States Attorney

By: */s/ Craig Peyton Gaumer*
Craig Peyton Gaumer
Assistant United States Attorney
U.S. Attorney's Office
210 Walnut Street, Suite 455
Des Moines, Iowa 50309
Tel: (515) 473-9300
Fax: (515) 473-9292
Email: craig.gaumer@usdoj.gov

## VERIFICATION

I, Eugene Travis Aaron, hereby verify and declare under penalty of perjury that I am a Special Agent with the Federal Bureau of Investigations (FBI), that I have read the foregoing Verified Complaint, and that I know the contents thereof and the matters contained in the Verified Complaint are true to my own knowledge, except for those matters not within my own personal knowledge and as to those matters, I believe them to be true.

The sources of my knowledge and information and the grounds for my belief are the official files and records of the United States and information provided to me by other law enforcement officers, as well as my investigation of this case, together with others, as an FBI Special Agent.

Dated: October 8, 2024.

_____
E. Travis Aaron, Special Agent
Federal Bureau of Investigations